CASE NO. 22-55749

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Daisy Alvarez,

*Plaintiff and Appellee,*

v.

Sheraton Operating Corporation, et al.

*Defendants and Appellants.*

United States District Court, Central District of California
Case No. 2:20-cv-03608-TJH-JC
Hon. Terry J. Hatter Jr.

**Appellants' Opening Brief**

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Greg S. Labate
*glabate@sheppardmullin.com*

Todd E. Lundell
*tlundell@sheppardmullin.com*

Jason M. Guyser
*jguyser@sheppardmullin.com*

Tyler Z. Bernstein
*tbernstein@sheppardmullin.com*

650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626
Telephone: 714-513-5100

Attorneys for Defendants and Appellants Sheraton Operating
Corporation and Marriott International, Inc.

## Corporate Disclosure Statement

The undersigned counsel certifies as follows: (1) Sheraton

Operating Corporation is a wholly-owned indirect subsidiary of Marriott

International, Inc., which is a publicly traded corporation and

(2) Marriott International, Inc. does not have any parent corporation,

and no publicly held corporation owns 10% or more of its stock.

Dated:  November 10, 2022

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        _____s/Todd E. Lundell_____

Greg S. Labate
Todd E. Lundell
Jason M. Guyser
Tyler Z. Bernstein
Attorneys for Defendants and
Appellants Sheraton Operating
Corporation and Marriott
International, Inc.

# TABLE OF CONTENTS

**Page**

Introduction..................................................................................6

Statement of Jurisdiction ...........................................................9

Addendum ...................................................................................9

Issue Presented ..........................................................................9

Statement of the Case...............................................................10

    A.    Alvarez signed an arbitration agreement as part of her employment with Sheraton ...................................10

    B.    Defendants move to compel arbitration, but the district court denies the motion on the ground Defendants' waived their right to arbitrate ..................13

Summary of Argument...............................................................16

Standard of Review ...................................................................19

Argument...................................................................................19

I.    Defendants Did Not Intentionally Relinquish Or Abandon Their Right To Compel Arbitration ..........................20

II.    Defendants Did Not Act Inconsistent With The Right To Arbitrate ..................................................................25

    A.    Alvarez has not shown any purposeful delay.................26

    B.    None of Defendants' acts identified by the district court are inconsistent with the right to arbitrate........27

        1.    Motion to dismiss.....................................................28

        2.    Answer ......................................................................32

        3.    Discovery ..................................................................34

Conclusion ................................................................................36

Statement of Related Cases ......................................................37

Certificate of Compliance..........................................................38

Certificate of Service ................................................................39

3

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Blau v. AT&T Mobility*
  2012 WL 566565 (N.D. Cal. Feb. 21, 2012) ......................................................28

*Britton v. Co-op Banking Group*
  916 F.2d 1405 (9th Cir. 2005) ....................................................................32, 34

*Fisher v. A.G. Becker Paribas Inc.*
  791 F.2d 691 (9th Cir. 1986) ......................................................................19, 32

*Groom v. Health Net*
  82 Cal.App.4th 1189 (2000) ..............................................................................27

*Hamer v. Neighborhood Hous. Servs. Of Chi.*
  138 S.Ct. 13 (2017) ............................................................................................20

*Hightower v. JPMorgan Chase Bank, N.A.*
  2014 WL 12558114 (C.D. Cal. Jan. 28, 2014) ..................................................34

*Khalatian v. Prime Time Shuttle, Inc.*
  237 Cal.App.4th 651 (2015) ..............................................................................27

*Lake Commc'ns, Inc. v. ICC Corp.*
  738 F.2d 1473 (9th Cir. 1984) ...........................................................................26

*Martin v. Yasuda*
  829 F.3d 1118 (9th Cir. 2016) ..............................................20, 26, 28, 29, 30

*Morgan v. Sundance, Inc.*
  142 S.Ct. 1708 (2022) ........................................................................................20

*Newirth v. Aegis Senior Communities, LLC*
  931 F.3d 935 (9th Cir. 2019) ...............................................................20, 21, 24

*Richards v. Ernst & Young, LLP*
  744 F.3d 1072 (9th Cir. 2013) ...............................................................19, 28, 34

*Sharif v. Wellness Int'l Network, Ltd.*
  376 F.3d 720 (7th Cir. 2004) .............................................................................28

**Page(s)**

<u>Cases</u>

*Shivkov v. Artex Risk Solutions*
  974 F.3d 1051 (9th Cir. 2020) ...........................................................25

*Stolt-Nielsen S.A., et al. v. Animalfeeds Int'l Corp.*
  559 U.S. 662 (2010)...........................................................................24

*United Computer Systems v. AT&T Corp.*
  298 F.3d 756 (9th Cir. 2002) .............................................................28

*Viking River Cruises, Inc. v. Moriana*
  142 S.Ct. 1906 (2022).........................................................................18

*Wilson v. Huuuge, Inc.*
  944 F.3d 1212 (9th Cir. 2019) ...........................................................19


<u>Statutes</u>

9 U.S.C. § 16(a)(1)(B) .............................................................................9

28 U.S.C. § 1332(d) .................................................................................9

28 U.S.C. §1441(b) ..................................................................................9

28 U.S.C. §1446 .......................................................................................9


<u>Other Authorities</u>

AAA Rule 27 ...........................................................................................31

Circuit Rule 28-2.7...................................................................................9

Rule 23 ....................................................................................................30

## Introduction

Defendants and Appellants Sheraton Operating Corporation ("Sheraton") and Marriott International, Inc. ("Marriott," and collectively with Sheraton, "Defendants") hereby appeal from an Order denying their renewed motion to compel arbitration of employment-related claims brought by Plaintiff Daisy Alvarez ("Alvarez"). In moving to compel, Defendants produced an arbitration agreement signed by Alvarez that indisputably required arbitration of Alvarez's claims. The district court nonetheless denied Defendants' motion, finding Defendants waived their right to arbitrate by litigating in federal court. On de novo review, this Court should reverse.

Consistent with the strong federal policy in favor of arbitration, waiver of the right to arbitrate is disfavored, and Alvarez bore a heavy burden to show Defendants (1) knew of and intentionally relinquished their right to arbitrate, and (2) acted in a manner inconsistent with their right to arbitrate. Here, Alvarez failed to meet her burden.

Alvarez had signed an arbitration agreement at the time of her hire, approximately four years before she filed her lawsuit in 2020. Only the signature page of the arbitration agreement was placed in her

6

personnel file. Shortly after her hire, and following Marriott's acquisition of Sheraton, Sheraton stopped requiring newly hired employees at the hotel where Alvarez worked to agree to mandatory arbitration as part of their employment (as they were required to do prior to Marriott's acquisition of Sheraton). Thus, when Defendants received Alvarez's complaint—four years after her hire—they did not initially realize Alvarez had signed the no-longer-used arbitration agreement that applied to her claims. Although Defendants later found a signature page of an arbitration agreement in Alvarez's personnel file and were aware that housekeeping employees like Alvarez were subject to a Collective Bargaining Agreement ("CBA") with arbitration provisions (that ultimately did not apply to Alvarez's wage-hour claims), Defendants' counsel reasonably did not realize the signature page was part of the arbitration agreement as opposed to some other employment-related policy or agreement. Thus, Defendants did not initially move to compel arbitration.

Once discovery began, however, Defendants realized that the signature page belonged to the arbitration agreement that had long-since been discontinued, but that indisputably covered Alvarez's claims.

7

Defendants then promptly moved to compel arbitration as soon as possible. In short, Defendants did not knowingly waive their right to arbitrate, but rather moved to compel arbitration as soon as they realized the relevant arbitration agreement existed. The district court's order should be reversed on this ground alone.

Moreover, Defendants did not intentionally engage in acts that were inconsistent with their right to arbitrate in order to take advantage of being in federal court. It is indisputable that arbitration would have been a much more favorable and advantageous forum for Defendants from the outset of this litigation because arbitration *would not* have included Alvarez's class claims. Notably, during the 13 months this case was pending, the case had not progressed beyond limited discovery and minimal motion practice, partly because Alvarez's complaint was filed on the eve of a global pandemic that slowed litigation to a virtual stop. In any event, all of the discovery and motion practice conducted in this litigation would have still been available in arbitration. Thus, the district court erred in determining Defendants' acts were inconsistent with their right to arbitrate.

This Court should, therefore, reverse the district court's order with instructions to grant Defendants' renewed motion to compel arbitration.

## Statement of Jurisdiction

The district court had jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. Sections 1332(d), 1441(b), 1446.

The district court entered its order denying Defendants' renewed motion to compel arbitration on July 12, 2022 [1-ER-2–9], and Defendants timely appealed on August 8, 2022 [2-ER-404–407.] This Court has jurisdiction under 9 U.S.C. § 16(a)(1)(B), which makes appealable orders denying a motion to compel arbitration.

## Addendum

There are no pertinent constitutional provisions, treaties, statutes, ordinances or rules to include in an addendum under Circuit Rule 28-2.7.

## Issue Presented

1.    Did the district court err by concluding that Defendants waived their right to compel arbitration?

9

**Statement of the Case**

**A.**    **Alvarez signed an arbitration agreement as part of her employment with Sheraton**

Alvarez is a former employee of Sheraton, who worked at the SLS Hotel in Los Angeles, California (the "Hotel"). [3-ER-383–385.] Sheraton was a subsidiary of Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") until Marriott acquired Starwood in September 2016. [2-ER-212.]

Plaintiff started working at the Hotel in March 2016. [3-ER-383.] At that time, as part of the regular onboarding process, Alvarez was provided a packet of new hire paperwork, which included numerous employment-related policies and a copy of the Hotel's "Mutual Agreement to Arbitrate." [2-ER-212–213.] The Hotel's human resources manager discussed with Alvarez each of the documents in the new hire paperwork, including the Arbitration Agreement, and gave Alvarez an opportunity to ask any questions related thereto and to obtain those documents in another language if necessary. [2-ER-212–213.] After Alvarez signed the Arbitration Agreement, the signature page was placed in Alvarez's personnel file. [2-ER-213.]

Through the Arbitration Agreement, Alvarez agreed to arbitrate

"all disputes and claims for which a court otherwise would be authorized by law to grant relief, in any manner, that I may have, now or in the future, during or after my employment with Starwood, of any and every kind or nature whatsoever . . . ." [2-ER-216.] More specifically, the Arbitration Agreement expressly states the parties agree to arbitrate "any and all Claims that arise out of or are related to [Alvarez's] offer of employment, transfer or promotion," including the type of employment-related claims Alvarez has brought against Defendants. [2-ER-216.] That provision is set forth more fully in the margin.[1]

---

[1]       Paragraph 5 of the Arbitration Agreement provides:

"Starwood and I hereby agree that the Claims subject to arbitration shall include but not be limited to any and all Claims that arise out of or are related to the offer of employment, transfer or promotion extended by Starwood to me, any withdrawal or rescission of that offer, any aspect of my employment with Starwood or the terms and conditions of that employment, any claim for bonus, vacation pay or other compensation, any termination of that employment, and claim for bonus, vacation pay or other compensation, any termination of that employment and any claim of discrimination, retaliation, or harassment based upon age, race, religion, sex, creed, ethnicity, pregnancy, veteran status, citizenship status, national origin, disability, handicap, medical condition, sexual orientation or any other unlawful basis, or any other unlawful conduct, under any applicable federal, state, local or other statutes, orders, laws, ordinances, regulations, or the like, or case law, that relate to employment or employment practices, including without limitation Title VII of the Civil Rights Act of 1964, as amended, the

The Arbitration Agreement also makes clear that it applies to all Starwood "affiliated entities . . . and all successors and assigns of any of them." [2-ER-216.]

In September 2016, about six months after Alvarez began her employment with Sheraton (a subsidiary of Starwood), Starwood was acquired by Marriott. [2-ER-212–213.] Following that acquisition, the Hotel where Alvarez worked ceased including the Arbitration Agreement, or any other mandatory arbitration agreement, with the new hire paperwork that was part of the onboarding process for new employees at the Hotel. [2-ER-213.] Thus, many employees who worked at the Hotel with Alvarez were not subject to an arbitration agreement.

---

Civil Rights Act of 1991, as amended, the Civil Rights Act of 1866 and 1871, as amended, the Age Discrimination in Employment Act of 1967, as amended, the Americans with Disabilities Act of 1990, as amended, the Family Medical Leave Act of 1993, as amended, the Employee Retirement Income Security Act of 1990, as amended, the Worker Adjustment Retraining and Notification Act, as amended, the Fair Labor Standards Act, as amended, the Vietnam Era Veterans' Readjustment Assistance Act, as amended, the Equal Pay Act, as amended, the Rehabilitation Act, as amended, the Immigration Reform and Control Act, and the state and local analogues to the foregoing."

**B.   Defendants move to compel arbitration, but the district court denies the motion on the ground Defendants' waived their right to arbitrate**

In March 2020, Alvarez filed a class action complaint asserting various employment-related claims against Defendants. [3-ER-379–403.]

Defendants' counsel initially did not realize Alvarez had signed the Arbitration Agreement, which was separate from the CBA that included a narrower arbitration provision that Defendants concluded did not apply to Alvarez's claims. [2-ER-157.] Alvarez's personnel file contained only the signature page to the Arbitration Agreement, which counsel did not initially identify as belonging to the Arbitration Agreement until preparing a document production.[2] [2-ER-157.]

Because Defendants did not initially identify the existence of the Arbitration Agreement applicable to Alvarez's claims, the parties

---

[2]   Counsel's initial conclusion was reasonable because the signature page in Alvarez's file referenced arbitration, but only in connection with a pension or benefit plan. [2-ER-166 ("any arbitration provision contained in a pension or benefit plan or an agreement covering change in control benefits and protections.").] Without further context, Defendants' counsel credibly did not realize this signature page was connected to the separate Arbitration Agreement that applied to Alvarez's claims, as opposed to the CBA. [2-ER-157.]

13

engaged in some minimal litigation before Defendants moved to compel arbitration. For example, Defendants removed the case to district court and then filed a motion to dismiss and to strike class allegations. [3-ER-355–378; 3-ER-324–354.] In July 2020, the district court denied Defendants' motion to strike, and granted in part and denied in part Defendants' motion to dismiss, holding that two of Alvarez's claims were barred by the statute of limitations. [3-ER-320–323.] Thereafter, Defendants answered the complaint. [3-ER-294–319.]

Notably, between late May 2020 and February 2021, other than Defendants' filing an answer, virtually no formal or substantive activity took place as the parties discussed potential mediation and informal resolution, but agreed to stay formal discovery. [2-ER-157–158.]

Starting in February 2021, the parties engaged in limited basic discovery. Alvarez first served written discovery and deposition notices, to which Defendants responded by providing some discovery but objecting to any discovery regarding the putative class. [2-ER-158.] Sheraton also propounded written discovery and served a deposition notice on Alvarez. In response, Alvarez served objections and provided no substantive responses. [2-ER-158.] Thus, the discovery conducted to

14

date would still be available for use in arbitration. [2-ER-158.] Alvarez produced no evidence to the contrary.

In March 2021, one year after filing her original complaint, Alvarez moved for leave to file a first amended complaint that would redefine and significantly expand the scope of the putative class from non-exempt housekeepers in California to all non-exempt employees statewide. [2-ER-283–293.]

In early April 2021, Defendants' counsel realized for the first time that the signature page in Alvarez's file belonged to the Arbitration Agreement that covered Alvarez's claims. [2-ER-157.] Defendants' counsel promptly sent Alvarez's counsel a letter enclosing the Arbitration Agreement and requesting Alvarez stipulate to arbitration. [2-ER-158.] When Alvarez's counsel refused, Defendants quickly moved to compel arbitration. [2-ER-260–282.]

After considering the motion, opposition, and reply, the district court denied Defendants' motion on the ground Defendants waived their right to compel arbitration. [2-ER-254–259.] Defendants appealed, and this Court ruled that the district court erred in applying California law

with respect to waiver. As a result, this Court reversed the district court's order and remanded with instructions to apply federal law.

The district court gave notice that Defendants could file a renewed motion to compel arbitration, which Defendants did. [2-ER-253; 2-ER-122–155.] After considering the renewed motion, the district court once again denied Defendants' motion on the ground that Defendants waived their right to compel arbitration. [1-ER-2–10.]

The district court found that Defendants "knew of their right to arbitrate and intentionally acted in a manner that was inconsistent with that right by choosing to extensively litigate this case before moving to compel arbitration." [1-ER-2–10.]

This appeal followed.

## Summary of Argument

Because strong federal policy favors enforcement of arbitration agreements, waiver of the right to compel arbitration is disfavored, and any party arguing waiver bears a heavy burden of proof. Specifically, a party seeking to avoid her contractual obligation to arbitrate on the grounds of waiver must prove the other party had knowledge of an

existing right to arbitrate and intentionally relinquished or abandoned that right by acting inconsistent with the right to arbitrate.

Here, the district court erred in concluding Alvarez met her significant burden of establishing waiver. Defendants did not intentionally relinquish or abandon their right to arbitrate because they simply did not initially realize that Alvarez had signed the Arbitration Agreement, which Defendants had stopped using many years ago. Even if Defendants are imputed with knowledge of the Arbitration Agreement as a result of their former human resources manager's knowledge, as the district court found, such imputed knowledge does not establish the requisite level of intent required to knowingly relinquish the right to compel arbitration. The evidence demonstrates Defendants had not been using the Arbitration Agreement for its new employees for approximately 3.5 years before Alvarez filed her Complaint. At the time Alvarez filed her Complaint, Defendants' counsel mistakenly, but reasonably, believed that the arbitration provision within the CBA was the only possible agreement that could apply to Alvarez's claims, without realizing that Alvarez had indeed agreed to arbitrate her claims pursuant to an Arbitration Agreement

that Defendants no longer used. Defendants' misunderstanding cannot equate to an intentional relinquishment of the right to arbitrate.

The district court also misapplied the relevant authorities to conclude that Defendants acted inconsistent with the right to arbitrate, which element is satisfied when a party chooses to delay the right to arbitrate to take advantage of being in federal court. None of Defendants' acts identified by the district court show an intent to take advantage of federal courts as opposed to arbitration. Indeed, it is indisputable that arbitration would have been a much more favorable forum for Defendants from the inception of this case.[3] The limited discovery that has taken place to date will be available for use in arbitration, and the minimal preliminary motion practice was also authorized by the parties' Arbitration Agreement. Thus, Defendants' acts were not contrary to their right to arbitrate.

---

[3] That is why, for example, Defendants expeditiously moved to compel arbitration of the individual PAGA claim following the Supreme Court's ruling in *Viking River Cruises, Inc. v. Moriana*, 142 S.Ct. 1906 (2022). [2-ER-11–35.] Further demonstrating the intent to arbitrate, in Alvarez's state court proceeding alleging claims of discrimination, Sheraton immediately (and successfully) moved to compel arbitration upon recognizing the Arbitration Agreement. [2-ER-238–252.]

In short, Alvarez failed to meet her heavy burden of proving each of the elements of waiver, and the district court erred in concluding Defendants waived their right to arbitrate.

## Standard of Review

This Court reviews "de novo both the denial of the motion to compel arbitration and [t]he interpretation and meaning of contract provisions." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019) (cleaned up). In addition, "[w]here, as here, the concern is whether the undisputed facts of defendant's pretrial participation in the litigation satisfy the standard for waiver, the question of waiver of arbitration is one of law which [this Court] review[s] *de novo*." *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074 (9th Cir. 2013).

## Argument

A determination of whether "the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). "Because waiver of the right to arbitration is disfavored, any party arguing waiver of arbitration bears a heavy burden of proof." *Ibid.* (internal quotation

marks and citations omitted); *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016).

Accordingly, a party seeking to establish waiver must demonstrate that the other party knowingly relinquished the right to arbitrate by acting inconsistent with that right. *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1714 (2022).

## I.   **Defendants Did Not Intentionally Relinquish Or Abandon Their Right To Compel Arbitration**

"Under federal law, waiver is 'the intentional relinquishment or abandonment of a known right.'" *Newirth*, 931 F.3d at 940 (*quoting Hamer v. Neighborhood Hous. Servs. Of Chi.*, 138 S.Ct. 13, 17 n.1 (2017)).

Here, Defendants did not *intentionally* relinquish or abandon a *known* right. Defendants' counsel reasonably did not realize Alvarez had signed the Arbitration Agreement until they responded to discovery in April 2021, which is when Defendants' counsel for the first time connected the signature page in Alvarez's file to the Arbitration Agreement covering her claims. [2-ER-157.] Before then, Defendants believed the only arbitration agreement in its possession was the arbitration provision within the CBA that Defendants had concluded

did not apply to Alvarez's claims. [*Ibid.*] As soon as Defendants discovered the Arbitration Agreement, they promptly provided it to Alvarez and requested that she stipulate to arbitration. [2-ER-157–158.][4] Thus, while Defendants do not dispute they are imputed with knowledge of the right to compel arbitration, they did not intentionally or purposefully relinquish that right by litigating in federal court up until Defendants' counsel realized the signature page belonged to the Arbitration Agreement.

The district court was skeptical of Defendants' claim they did not become aware of the Arbitration Agreement until April 2021. [1-ER-6.] Specifically, the district court questioned why Defendants would have included an affirmative defense in their answer asserting that Alvarez' claims were preempted by the Federal Arbitration Act if Defendants'

---

[4] Just like Defendants, Alvarez's counsel did not realize the signature page they received belonged to the Arbitration Agreement. Alvarez contended that in January 2020, prior to filing suit, Defendants provided Alvarez with a "copy of [Alvarez's] personnel file" and "[c]opies of all documents signed by [Alvarez] in connection with her employment." [2-ER-80.] This necessarily included the signature page to the Arbitration Agreement, which was part of Alvarez's personnel file. [2-ER-213.] Despite receiving the signature page in January 2020, Alvarez either did not recognize the signature page as belonging to her Arbitration Agreement, just like Defendants did not, or Alvarez feigned ignorance while refusing to abide by her Arbitration Agreement.

attorneys did not believe there was an arbitration agreement covering her claims. [*Ibid.*] However, the district court ignores the evidence clearly explaining why Defendants reasonably believed that Alvarez's claims could be covered by the arbitration provision within the CBA at the time they filed their Answer. Their inclusion of the affirmative defense is, therefore, not inconsistent with their lack of knowledge of the arbitration agreement covering Alvarez's claims.

Since January 2014, housekeeping employees at the Hotel where Alvarez worked have been union-represented and covered by the CBA. [2-ER-210..] Defendants were aware of an arbitration provision within the CBA and reasonably believed that it might or could apply to Alvarez's claims. [2-ER-157.] After evaluating the CBA further, Defendants concluded that the arbitration provision within the CBA did not apply, but including the arbitration defense in Defendants' answer was entirely consistent with Defendants' still ongoing investigation of Alvarez's claims. [*Ibid.*]

The district court next queried how it is possible that Defendants only first became aware in April 2021 that the signature page in Alvarez's personnel file belonged to the Arbitration Agreement when

Defendants offered evidence that their employees knew of the existence of the Arbitration Agreement. [1-ER-6.] Once again, the district court ignores the evidence answering this question. Plaintiff began her employment on or around March 24, 2016. [3-ER-383.] Up until September 2016 when Starwood was acquired by Marriott, employees such as Alvarez were provided a packet of new hire paperwork as part of the onboarding process, which included numerous employment-related policies, including a copy of the Arbitration Agreement. [2-ER-212–13, 216–18.] After Starwood was acquired by Marriott, however, newly-hired employees at the Hotel no longer signed arbitration agreements as part of the onboarding process. [2-ER-209-10, 213.] Thus, from September 2016 to the date Alvarez filed her complaint in March 2020, the only potentially applicable arbitration provision would have been the provision within the CBA. While it is true that employees working at the Hotel prior to September 2016 knew of the Arbitration Agreement, that does not mean that Defendants' employees were aware of the Agreement in March 2020 when it had not been utilized for over 3.5 years. Importantly, the employee who explained the onboarding

process prior to September 2016 and authenticated Alvarez's

Arbitration Agreement was a *former* employee of the Hotel. [2-ER-212.]

Even if the former employee's knowledge of the Arbitration

Agreement must be imputed to Defendants as stated by the district

court, such imputed knowledge does not establish that Defendants

*intentionally* abandoned the right. *See Newirth v. Aegis Senior*

*Communities, LLC*, 931 F.3d 935, 941 (9th Cir. 2019) ("a party acts

inconsistently with exercising the right to arbitrate when it (1) makes

an *intentional decision* not to move to compel arbitration and (2)

actively litigates the merits of a case for a prolonged period of time *in*

*order to take advantage of being in court*." (emphasis added)). Critically,

Defendants obtained no advantage by remaining in federal court, and

they would have been greatly advantaged by moving to compel

arbitration and dismissing Alvarez's class claims at the outset of the

parties' dispute had they known of the Arbitration Agreement. That is

because, as the United States Supreme Court has held, arbitration

agreements like the one at issue here that are "silent" as to whether

class proceedings are permitted cannot be interpreted as allowing them

in the arbitral forum. *Stolt-Nielsen S.A., et al. v. Animalfeeds Int'l*

*Corp.*, 559 U.S. 662, 684 (2010). This Court also recently confirmed that arbitration agreements that are silent regarding class arbitration do not permit class claims. *Shivkov v. Artex Risk Solutions*, 974 F.3d 1051, 1069 (9th Cir. 2020) ("As the district court concluded, because the Agreements are silent on class arbitration, they do not permit it."). Thus, in arbitration, Defendants would only have to defend Alvarez's individual claims. In federal court, Defendants will be forced to defend putative class claims that are considerably more time consuming and expensive to defend.

There was just no rational advantage to Defendants knowingly deciding to remain in federal court. And this Court should not conclude that Defendants acted irrationally to intentionally relinquish their known right to individual arbitration in favor of litigating class claims in federal court.

## II. Defendants Did Not Act Inconsistent With The Right To Arbitrate

The district court was also wrong to conclude that Alvarez met her burden in proving Defendants took acts inconsistent with the right to arbitrate. [1-ER-7–9.] "There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to

25

arbitrate." *Martin*, 829 F.3d 1118, 1125. This Court has held, however "that a party's extended silence and delay in moving for arbitration *may* indicate a '*conscious* decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which would be inconsistent with a right to arbitrate." *Ibid.* (emphasis added). This element is "satisfied when a party *chooses* to delay his right to compel arbitration by actively litigating his case *to take advantage* of being in federal court." *Ibid.* (emphasis added).

## A. Alvarez has not shown any purposeful delay

Here, it cannot be said that Defendants "chose" to delay their arbitration rights to take advantage of being in federal court because they did not realize Alvarez had signed an Arbitration Agreement until April 2021, after which they promptly moved to compel arbitration. As explained above, there is no advantage to being forced to defend class claims in federal court over litigating individual claims in arbitration.

Even assuming, however, that Defendants are imputed with knowledge of the Arbitration Agreement at the time Alvarez filed her complaint, 13 months before Defendants moved to compel arbitration, such a delay is insufficient to establish waiver. *See Lake Commc'ns, Inc.*

*v. ICC Corp.,* 738 F.2d 1473, 1477 (9th Cir. 1984) (finding no waiver where defendant had filed a motion to dismiss and did not move to compel arbitration until over a year after the complaint was filed)*; Khalatian v. Prime Time Shuttle, Inc.*, 237 Cal.App.4th 651, 660-663 (2015) (no waiver despite 14-month delay in demanding arbitration); *Groom v. Health Net*, 82 Cal.App.4th 1189, 1194-1199 (2000) (no waiver despite nearly 12-month delay in moving to compel arbitration and defendant's filing of multiple demurrers that ultimately resulted in the dismissal with prejudice of two of plaintiff's causes of action).

Simply put, the delay between the time Alvarez filed her complaint and Defendants' motion to compel arbitration does not show waiver.

### B. None of Defendants' acts identified by the district court are inconsistent with the right to arbitrate

Aside from the alleged 13-month delay, the district court concluded that Defendants acted inconsistent with the right to arbitrate based on the following actions: (1) filing a motion to dismiss, (2) filing an answer, and (3) conducting discovery. None of these acts are inconsistent with the right to arbitrate.

### 1. Motion to dismiss

Filing a motion to dismiss is not inconsistent with the right to arbitrate. *United Computer Systems v. AT&T Corp.*, 298 F.3d 756, 765 (9th Cir. 2002) (holding that defendant did not waive arbitration by bringing motion to dismiss based on res judicata in which the issue of remedy was not raised); *see also Richards*, 744 F.3d at 1074-75 (litigant who obtained dismissal of certain claims and had motion to strike prayer for injunctive relief granted did not litigate on the merits so as to waive the right to arbitrate); *Blau v. AT&T Mobility*, 2012 WL 566565, at *2 (N.D. Cal. Feb. 21, 2012) ("Moreover, 'it is well-established that a party does not waive its right to arbitrate merely by filing a motion to dismiss.'" (quoting *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)).

The district court cited to this Court's decision in *Martin* to support its finding that filing a motion to dismiss on the merits is an act inconsistent with the right to arbitrate. [1-ER-7.] That case is, however, noticeably distinguishable. True, this Court in *Martin* stated that "although filing a motion to dismiss that does not address the merits of the case is not sufficient to constitute an inconsistent act, seeking a

decision on the merits of an issue *may* satisfy" the element of an act inconsistent with the right to arbitrate. *Id*. at 1125 (emphasis added). But the acts that constituted waiver in *Martin* went far beyond moving to dismiss and far beyond any litigation acts by Defendants here. And contrasting the circumstances in *Martin* with those here demonstrates that Defendants have not waived their right to arbitrate Alvarez's claims.

In *Martin*, the defendants knew about the existence of an arbitration agreement and yet intentionally and strategically chose to litigate the case for 17 months, including devoting considerable time and effort to a joint stipulation structuring the litigation, filing a motion to dismiss on a key merits issue, entering into a protective order, answering discovery, and preparing for and conducting a deposition. *Id*. at 1126. Notably, after bringing to plaintiffs' and the court's attention the existence of binding arbitration agreements, the defendants consciously chose not to compel arbitration for several months because they preferred being in federal court over arbitration. *Id*. at 1121-1122. Specifically, when the court asked defense counsel during a scheduling conference whether defendants intended to move to compel arbitration,

defendants' counsel responded, "[W]e haven't made a decision about that. And frankly . . . I think our view of it is we are probably better off just being here in the court with the procedures of Rule 23 and discovery and federal practice than handling it in arbitration." *Id.* at 1122 (internal quotation marks omitted). The court then warned defense counsel about the possibility of waiver, but the defendants nonetheless chose to continue litigating according to the district court's litigation plan.

In other words, the defendants in *Martin* deliberately chose to keep the case in federal court despite knowing they had the right to arbitrate, purposefully availed themselves of the perceived advantages of the federal procedures, and only moved to compel arbitration when they thought it would be tactically advantageous to do so. It should come as no surprise that based on the totality of these actions, this Court concluded the defendants acted inconsistent with their right to arbitrate. *Id.* at 1126.

In stark contrast, Defendants here never consciously chose to delay seeking arbitration, but filed their motion to compel as soon as they connected the signature page in Alvarez's file to the Arbitration

Agreement covering Alvarez's claims. There is absolutely no evidence showing otherwise. None. Indeed, as explained above, there is no advantage to remaining in federal court with putative class claims as opposed to being in arbitration with a single plaintiff. Defendants did not seek to obtain the benefit of federal court litigation before moving to compel.

Moreover, while Defendants successfully obtained dismissal of two of Alvarez's claims on the ground they were barred by the statute of limitations, Defendants did not purposefully choose federal court as a means to dismissing these claims. Indeed, the same legal standards governing the limitations period for those claims would have applied in arbitration. [2-ER-190 (AAA Rule 27 allowing dispositive motions).] Thus, the arbitrator would have been required to dismiss those claims just as the district court did.

Simply put, Defendants did not realize at the time they filed the motion to dismiss that the signature page in Alvarez's file was connected to an Arbitration Agreement requiring arbitration of her claims, and Defendants would have preferred to dismiss Alvarez's class claims by compelling individual arbitration over dismissing two of

Alvarez's individual claims while leaving intact the putative class claims in federal court. The motion to dismiss cannot be construed as an intentional act to engage the benefits of federal court over the right to arbitrate.

### 2. Answer

With regard to Defendants' answer, courts have consistently held that filing an answer is not inconsistent with the right to compel arbitration. *See Britton v. Co-op Banking Group,* 916 F.2d 1405, 1407, 1413-1414 (9th Cir. 2005) *(*no waiver despite defendant filing answer and failing to demand arbitration for over a year after complaint was filed); *Fisher v. A.G. Becker Paribas Inc.,* 791 F.2d 691, 693 (9th Cir. 1986) (no waiver despite defendant filing answer and failing to raise arbitration as an affirmative defense). That is particularly true here because Defendants had not yet discovered Alvarez's Arbitration Agreement at the time the answer was due and, in any event, could not risk a default by failing to file an answer. A defendant should not be found to have waived the right to arbitrate by filing an answer to protect itself against default.

As mentioned above, the district court emphasized the fact that Defendants asserted that Alvarez's claims were subject to arbitration as an affirmative defense in their Answer, supposedly evincing that Defendants intentionally failed to move to compel arbitration. [1-ER-8.] That conclusion might have merit if Defendants had asserted the defense based on the applicable Arbitration Agreement. As discussed at length above, however, Defendants asserted the affirmative defense based on the arbitration provision within the CBA. At the time they filed the answer, Defendants reasonably believed that the arbitration provision within the CBA could apply to Alvarez's claims because Alvarez was a housekeeping employee at the Hotel asserting claims related to her employment at that unionized Hotel. [2-ER-157, 210.] Only after further evaluation did Defendants conclude that the arbitration provision within the CBA did not apply to Alvarez's claims. [2-ER-157.] Thus, the district court erred in concluding that Defendants' affirmative defense with respect to the CBA evidenced an intentional decision to waive their right to compel arbitration pursuant to the Arbitration Agreement.

### 3. Discovery

The discovery Sheraton propounded and Defendants responded to is usable in arbitration.[5] [2-ER-158.] A party does not act inconsistent with the right to arbitrate by propounding and/or responding to discovery that would be available and useful in arbitration. *See Richards*, 744 F.3d at 1075 (party does not act inconsistent with right to arbitrate where it obtains discovery that it also could gain in arbitration); *Britton*, 916 F.2d at 1413 ("avoidance of discovery" not inconsistent with right to arbitrate); *Hightower v. JPMorgan Chase Bank, N.A.*, 2014 WL 12558114, at *7 (C.D. Cal. Jan. 28, 2014) (even class-related discovery provided by defendants, and information provided by plaintiff to defendants, is not inconsistent with right to arbitrate).

Here, the Arbitration Agreement states "the parties shall be allowed adequate discovery as part of the arbitration process, including reasonable access to essential documents and witnesses as determined by agreement or the arbitrator." [2-ER-164.] Moreover, the AAA Rules incorporated into the Arbitration Agreement state "[t]he arbitrator shall

---

[5]    Defendant Marriott did not propound any discovery.

have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." [2-ER-185.] Given these provisions governing discovery, the limited discovery conducted to date will be available for use in arbitration [2-ER-158], and there is no evidence to the contrary. Thus, the district court erred in finding that discovery inconsistent with the right to arbitrate.

Accordingly, the district court erred in ruling that Defendants' actions prior to moving to compel arbitration were inconsistent with the right to arbitrate.

## Conclusion

For the foregoing reasons, the Court should reverse the district court's denial of Defendants' motion to compel arbitration with instructions for the district court to enter a new order compelling arbitration of Alvarez's claims.

Dated: November 10, 2022

Sheppard, Mullin, Richter & Hampton LLP

By        *s/Todd E. Lundell*

Greg S. Labate
Todd E. Lundell
Jason M. Guyser
Tyler Z. Bernstein
Attorneys for Defendants and Appellants Sheraton Operating Corporation and Marriott International, Inc.

## Statement of Related Cases

Defendants are not aware of any related cases pending before the Court.

Dated:  November 10, 2022

Sheppard, Mullin, Richter & Hampton LLP

By      *s/Todd E. Lundell*

Greg S. Labate
Todd E. Lundell
Jason M. Guyser
Tyler Z. Bernstein
Attorneys for Defendants and
Appellants Sheraton Operating
Corporation and Marriott
International, Inc.

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and

Ninth Circuit Rule 32-1, I certify that the attached brief is

proportionally spaced, has a typeface of 14 points, and contains 5,594

words.

Dated:  November 10, 2022     Sheppard, Mullin, Richter & Hampton LLP

By        *s/Todd E. Lundell*
_____
Greg S. Labate
Todd E. Lundell
Jason M. Guyser
Tyler Z. Bernstein
Attorneys for Defendants and
Appellants Sheraton Operating
Corporation and Marriott
International, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of November, 2022, I electronically filed the foregoing **Appellant's Opening Brief** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Saima Ali | *Attorneys for* |
| Karnit Bruan | *Plaintiff/Appellee* |
| Kaveh Sam Elihu | |
| Employee Justice Legal Group, PC | |
| 1001 Wilshire Boulevard | |
| Los Angeles, CA 90010 | |
| Email:    sali@ejlglaw.com | |
|             kbraun@ejlglaw.com | |
|             kelihu@ejlglaw.com | |


*/s/ Laurie Palmer*
Laurie Palmer